IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH H. LEWIS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | CV-04-BE-01115-E |
| | ] | |
| **H&R BLOCK EASTERN ENTERPRISES, INC.,** | ] | |
| | ] | |
| | ] | |
| **Defendant.** | | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is currently before the court on a motion for summary judgment (doc. # 28), supporting brief (doc. # 30), and supporting evidentiary material (doc. # 29) filed by defendant H&R Block Eastern Tax Service.  Plaintiff Deborah H. Lewis filed an objection to the motion for summary judgment (doc. # 34) and subsequently filed evidentiary submissions in opposition to the motion for summary judgment (doc. # 35).  In response to evidentiary submissions filed with the plaintiff's objection to the motion for summary judgment, the defendant filed a motion to strike the plaintiff's affidavit (doc. # 36).

Having reviewed the briefs and evidence submitted by both parties, the court concludes that the defendant's motion for summary judgment is due to be DENIED.  The court specifically finds that the plaintiff has established a *prima facie* case of discrimination based on evidence that

a similarly-situated employee of a different race was disciplined more leniently. Furthermore, the above-referenced differential treatment is sufficient to create a genuine issue of material fact on the issue of pretext.

Similarly, the defendant's motion to strike the plaintiff's affidavit is due to be DENIED. In ruling on the motion for summary judgment, the court did not rely on those portions of the affidavit challenged by the defendant in its motion to strike.

The facts, as presented in the light most favorable to the plaintiff, are as follows.[1] This case arises from plaintiff Deborah Lewis' employment with H&R Block. Lewis alleges that her April 2004 termination was based on her race, Caucasian, in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq., Title VII and 42 U.S.C. § 1981.

Lewis begin working for H&R Block in 1984. At different times during her employment, plaintiff worked as a tax preparer, office supervisor, office manager, and office coordinator. During the off-season, Lewis often worked as a part-time instructor for H&R Block, teaching "everything that Block offers" including "the very basic [classes] all the way up to the highest level of courses," including courses on H&R Block's policies and procedures.[2] In twenty years of employment prior to her termination, Lewis never received any type of discipline for any type of infraction.

H&R Block's Anniston District Manager and plaintiff's immediate supervisor was Anne Dailey Tollard. The Anniston District has 13 tax preparation offices, each with an office leader,

---

[1] Based on the through presentation of the facts contained in the parties' briefs, the court does not include a complete recitation of facts in this Memorandum Opinion.

[2] *See* plaintiff's Dep., p. 39-44, 58

staff, and tax preparers. In 2004, Lewis was working as an office coordinator in H&R Block's Jacksonville, Alabama office.

H&R Block uses an established fee schedule to determine how much clients pay for tax preparation services. The system works as follows: a tax preparer interviews the client and enters all of the tax information into the computer system. The computer system then generates a return and a fee for services. Consequently, tax preparers cannot give the client a specific price until after the return is actually completed.

To retain customers who complain about the price, H&R Block employees utilize several approved methods for reducing a tax preparation fee. For example, tax preparers may enter a "Code 04" discount. With the Code 04 discount, the tax preparer decides how much to reduce the fee and, at least in theory, nothing limits the number of times a tax preparer can use a Code 04 to reduce a tax preparation fee. However, each time a tax preparer uses a Code 04, he or she must complete a form 2228, explaining the reason for the discount. Block tax preparers may also reduce a tax preparation fee under the "Friends and Family discount" program that permits the preparation of free tax returns for up 15 friends or family members.

In 2004, the plaintiff received numerous complaints from customers about the fees for tax preparation. From January 1, 2004 through April 8, 2004, approximately 43 clients walked out of the Jacksonville office after the completion of their tax return because of dissatisfaction with the tax preparation fee. In an effort to retain customers, Lewis used the individual form code, typically used to price individual tax forms, to reduce the price for ten fully completed tax returns for clients who complained about the fee.

The individual form code is typically used when H&R Block prepares only a single form

rather than an entire return. For example, if a client had prepared his tax return and only needed H&R Block to prepare a Schedule C, the charge would be billed in the system under the code "individual form prepared." Although tax preparers and office leaders sometimes prepare individual forms for clients, it is an unusual event.

After reviewing the March 12, 2004 Special Pricing Report, Tollard noticed a high number of charges for individual tax form preparation. However, Tollard knew that tax preparers sometimes mistakenly used the individual form code so she asked each office leader to talk to the preparer who used the individual form code to determine if they actually prepared an individual form or had mistakenly used the code.

Within a couple of weeks, all of the office leaders except plaintiff had given Tollard an explanation for the individual form code usage. As Tollard expected, most of the codes were mistakes. However, Lewis did not respond to Tollard's inquiry.

Because plaintiff had not provided any explanation, Tollard conducted a personal investigation of the returns filed at the Jacksonville office. Tollard concluded that Lewis had prepared and electronically filed full tax returns for clients while charging only for preparation of a single form. Tollard's assistant, Barbara Kilgrove, called plaintiff and told her that she needed to pull the Special Pricing Report and provide an explanation.

Lewis admits that in her haste she might have provided Tollard with explanations that may or may not have been correct.[3] However, plaintiff disputes that defendant's contention that she lied or intentionally misrepresented her reasons for using the individual form code.

---

[3]*See* doc. # 34, p. 7. *See also*, Pl's Dep., p. 252.

Tollard terminated Lewis on April 4, 2004 for coding fully-prepared tax returns as individual forms.  According to the plaintiff, the defendant has no written policy restricting the use of the individual form code as a method of reducing a tax preparation fee.  Furthermore, Lewis alleges that she was never advised that discounting a tax return by using the individual form code violated H&R Block's policy.  Plaintiff subsequently filed suit in this court on May 28, 2004.

## II. STANDARD OF REVIEW AND ANALYSIS

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases where no genuine issues of material facts are present.  Fed. R. Civ. P. 56.  Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986).  A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251-52.  In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986).  Furthermore, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment.  *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984).

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes that Lewis has presented sufficient evidence that Pat Thomas, an African-American tax preparer in the defendant's Pell City office,

is a similarly-situated comparator.[4]  Evidence that similarly situated employees are disciplined more leniently raises the inference that a workplace rule was discriminatorily applied, and consequently, is admissible to support a disparate treatment claim.  *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1186 (11th Cir.1984).  To prove that employees are "similarly situated," Lewis must show that the comparator employees are "involved in or accused of the same or similar conduct" yet are disciplined in a different, more favorable manner.  *Anderson v. WBMG-42*, 253 F.3d 561, 564 (11th Cir. 2001).

As the above-referenced authorities indicate, the inquiry focuses on the nature of the offenses committed and the punishments imposed.  *See Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998).  The affidavit of Brenda McKay, a former H&R Office Manager, indicates that sometime in 2003, Tollard came into her office and directed her to tell Thomas not to price a full return as a individual return.  McKay further testified that Tollard "did not discipline Pat Thomas for coding full returns as individual returns in order to give a client a discount."[5]

In its reply brief, the defendant argues that Thomas is not similarly-situated because McKay's affidavit is silent on the issue of whether Thomas *intentionally*, as opposed to mistakenly, coded full returns as individual forms.  According to H&R Block, "[u]nlike Thomas, [p]laintiff

---

[4] A plaintiff demonstrates a prima-facie case of discriminatory discharge by showing: (1) she belongs to a protected group, (2) she experienced an adverse-employment action, (3) she was qualified for his job; and (4) the employer treated similarly-situated employees outside her protected group more favorably.  *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997).  For purposes of the motion for summary judgment, the defendant concedes that the plaintiff can establish the first three elements of a *prima facie* case.  Consequently, at issue in this case is Lewis' ability to present evidence of a similarly-situated comparator and the issue of pretext.

[5] *See* doc. # 34, Ex. 2.

6

intentionally miscoded and then lied to cover it up." [6] However, given McKay's affidavit, a jury could reasonable conclude that Thomas and Lewis were involved in the same or similar conduct - using the individual form code to reduce the price of a full tax return to give a client a discount - but subjected to differential treatment by the same supervisor. Accordingly, the court finds that Tollard's more favorable treatment of the African-American employee raises the necessary inference that a workplace rule was discriminatorily applied. The issue of the motivation behind Thomas' use of the individual form code (i.e., whether it was intentional or mistaken) is a question more properly resolved by the jury.

However, the court concludes as a matter of law that Elise Turner is *not* a valid comparator. Turner, an African-American tax preparer in H&R Block's Gadsden office, was accused in 2004 of filing head of household returns for couples who had filed joint returns in prior years and adding information to tax returns. Lewis even admits that she and Turner were not accused of the same misconduct. According to the plaintiff, Turner "filed fraudulent returns and cheated Block out of thousands of dollars worth of returns for years . . . . [and] committed tax fraud - a criminal act" but was not terminated until March 2005.[7]

"[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999). Implicit in *Maniccia* is the understanding that the only the conduct which served as a basis for the defendant's decision to terminate Lewis is relevant in determining if Turner is similarly situated. *See Lloyd v. Hi-Ridge*

---

[6] *See* doc. # 37, p. 6.
[7] *See* doc. # 34, p.22.

7

*Transport*, Civ. A. 2:05CV07TWO, *W*L 2654355, at *3 -4 (M.D. Ala. October 18, 2005). Given the undisputed evidence that the quantity and quality of Turner's misconduct was not similar to the plaintiff's, the court concludes that Turner is not a valid comparator for purposes of establishing a *prima facie* case of discriminatory termination.

Lastly, the court concludes that Lewis has presented sufficient evidence of pretext to survive a motion for summary judgment. A plaintiff can demonstrate pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence." *Hamilton v. Montgomery County Bd. of Educ.*, 122 F. Supp. 1273, 1281 (M.D. Ala. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). Furthermore, a plaintiff may utilize comparator evidence of the differential application of the work-place rules to establish pretext. *See Walker v. Mortham*, 158 F.3d 1177, 1184 n. 10 (11th Cir. 1998); *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir. 1985).

In this case, the strength of the plaintiff's comparator evidence relating to Pat Thomas is sufficient to establish pretext because it raises questions about the legitimacy of the defendant's race-neutral justification that the plaintiff was terminated after twenty years of exemplary service for intentionally misusing the individual form pricing code in an effort to retain customers. Lewis has presented sufficient evidence for a reasonable fact-finder to conclude that the above-referenced justification offered by the defendant is not worthy of belief. Accordingly, the defendant's motion for summary judgment on the defendant's motion for summary judgment is due to be DENIED.

### III. CONCLUSION

Based on the foregoing analysis, the court concludes that the defendant's motion for

summary judgment is due to be DENIED.  A separate, final order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 10th day of November, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE